**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**MARCH 16, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 45

Candice D.M. Crichlow,                                  Plaintiff and Appellee

v.

Miguel S.J. Andrews,                                  Defendant and Appellant

## No. 20220204

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

Kristin A. Redmann, Mandan, ND, for plaintiff and appellee; submitted on brief.

Miguel S. J. Andrews, Bismarck, ND, self-represented, defendant and appellant; submitted on brief.

**Crothers, Justice.**

[¶1]   Miguel Andrews appeals from a divorce judgment dividing the marital estate between Candice Crichlow and him. We conclude the district court clearly erred by including in the marital estate the value of Andrews's financial accounts opened after the agreed upon valuation date. We affirm in part, reverse in part, and remand.

I

[¶2]   Crichlow and Andrews married in 2013. Crichlow sued Andrews for divorce in August 2020. At the October 2021 trial, the parties presented evidence and testimony about their assets and debts, including Crichlow's medical school debt and Andrews's financial accounts. During the parties' relationship but before they married, Crichlow attended medical school in Trinidad and Tobago and incurred a $334,726 debt.

[¶3]   Crichlow served Andrews with discovery requesting the identification of all financial assets. Crichlow requested the balances of Andrews's accounts as of the date the divorce proceeding was commenced. Crichlow testified Andrews's discovery responses were received on August 13, 2021.

[¶4]   Andrews listed the balances of six accounts on or near August 28, 2020, the date he received service of the summons: two checking accounts, a savings account, a 401(k), a Robinhood account and an NDPERS pension. Andrews's financial assets totaled $42,324.61. In response to a request for assets "not otherwise provided within your responses" Andrews provided three additional accounts: a Wealthfront IRA, a Wealthfront brokerage account and a Wealthfront individual cash account. The Wealthfront accounts totaled $65,538.61. He stated the Wealthfront accounts included "funds from the date of [the] complaint plus funds from the interim." Andrews testified the Wealthfront accounts did not exist when he was served with the summons and complaint. He testified he opened the Wealthfront accounts in December 2020 "to roll my old 401(k) into an IRA so that I could continue contributing to it."

He testified he rolled funds from a checking account into the brokerage account and the rest of the Wealthfront account funds were from money he "earned between the complaint and [trial]." Andrews testified the value of the Wealthfront accounts should not be included in the marital estate.

[¶5]   The district court valued the marital estate as of August 28, 2020, when Andrews was served with the summons. The court included in the marital estate Crichlow's medical school debt and the value of Andrews's assets, including the Wealthfront accounts. The court divided the marital equity equally between the parties. The court awarded Crichlow the marital home and the mortgage. The court held Crichlow responsible for repaying her medical school debt. The court awarded Andrews his financial accounts and held him responsible for his debts. Andrews also received a $21,695 property equalization payment.

## II

[¶6]   Andrews argues the district court erred in distributing the marital estate.

[¶7]   The district court's distribution of property will not be reversed on appeal unless its findings are clearly erroneous. *Willprecht v. Willprecht*, 2020 ND 77, ¶ 19, 941 N.W.2d 556. A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 10.

[¶8]   Under N.D.C.C. § 14-05-24(1), the district court must make an equitable property distribution. The court must include all of the parties' assets and debts in the marital estate and then consider the *Ruff-Fischer* guidelines to determine an equitable property distribution. *Willprecht*, 2020 ND 77, ¶ 19. The *Ruff-Fischer* guidelines include the following factors:

> "[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial

2

circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material."

*Willprecht*, at ¶ 19 (quoting *Lee v. Lee*, 2019 ND 142, ¶ 12, 927 N.W.2d 104).

A

[¶9] Andrews asserts the district court should not have included the values of the Wealthfront accounts in the marital estate. He claims the Wealthfront accounts opened after the August 28, 2020 valuation date are non-marital assets.

[¶10] Under N.D.C.C. § 14-05-24(1), "the valuation date for marital property and debt is the date mutually agreed upon between the parties." The district court "[does] not have discretion to include property acquired after [the valuation date] in valuing the marital estate." *Berdahl v. Berdahl*, 2022 ND 136, ¶ 18, 977 N.W.2d 294. Any assets acquired after the valuation date are not subject to distribution by the court. *Id.* (citing *Wald v. Wald*, 2020 ND 174, ¶ 16, 947 N.W.2d 359).

[¶11] The district court found Andrews and Crichlow "agreed on a valuation date as the date of service of the summons or the nearest date to that time for which information is available." Andrews was served the summons on August 28, 2020.

[¶12] The district court included the values of Andrews's Wealthfront accounts in the marital estate. The court found:

> "Regarding the financial and retirement accounts, the parties agree on the values of all accounts. Miguel testified that his Wealthfront Brokerage Account, Wealthfront IRA Account, and Wealthfront Individual Cash Account were opened in December 2020 and argues that since this was after the date of the parties's separation in September 2020 these accounts should not be included in the marital estate. However, given the amounts indicated in these funds, the proximity in time to the parties's separation when these accounts were opened, and Miguel's

3

earnings from employment during that time period, it appears that the great majority of the funds in these accounts would have been earned during the marriage and prior to separation and, therefore, will be included in the marital estate for the purposes of making a fair and equitable distribution."

[¶13] Andrews testified he opened the Wealthfront accounts in December 2020, after the valuation date. He testified he transferred funds from accounts that existed on the valuation date into the Wealthfront accounts. Crichlow did not present evidence to rebut Andrews's testimony relating to the Wealthfront accounts. Crichlow testified she did not know about the Wealthfront accounts, but she did not claim Andrews hid the assets or opened the accounts before December 2020.

[¶14] In *Kitzan v. Kitzan*, 2023 ND 23, ¶ 9, we addressed a similar argument about financial accounts opened after the valuation date. Heather Kitzan argued three bank accounts opened after the date of separation should not have been included in the marital estate. *Id.* The district court found Kitzan moved funds "from existing accounts to newly opened accounts in an effort . . . to conceal assets and reduce the overall marital estate." *Id.* The court found Kitzan's testimony that she closed one account and moved the money into a new account not credible because she did not provide documentation. *Id.* The court included the funds in the new account to Heather Kitzan's share of the marital estate "[b]ased on the findings that she had hidden money and her testimony was not credible." *Id.* We affirmed the court's findings because the court weighed the testimony and "made a finding by choosing one of two permissible views of the evidence." *Id.*

[¶15] Here, the district court did not find Andrews's testimony about opening the Wealthfront accounts in December 2020 not credible. Nor did it find Andrews was concealing assets. The court included Andrews's Wealthfront accounts in the marital estate because "it appear[ed] that the great majority of the funds in these accounts would have been earned during the marriage and prior to separation." The court had evidence of Andrews's funds on the valuation date and after the Wealthfront accounts were opened. The court nevertheless speculated the funds were earned during the marriage; however,

no evidence established Andrews opened the accounts before the valuation date. Andrews's discovery response that the Wealthfront accounts included funds "from the date of the complaint" is consistent with rolling existing funds into a new account. Andrews provided his financial account balances on or near the date he was served with the summons. The court did not have discretion to include Andrews's property acquired after the valuation date in the marital estate. *Berdahl,* 2022 ND 136, ¶ 18.

[¶16] The district court's inclusion of Andrews's Wealthfront accounts acquired after the valuation date was induced by an erroneous view of the law. We reverse the court's distribution of marital property, and remand with instructions to include only Andrews's financial accounts that existed on the valuation date and to equitably distribute the property after determining the value of the marital estate.

B

[¶17] Because we are reversing the district court's distribution of marital property, on remand the court must determine an equitable division of the property. We therefore address issues raised on appeal that are likely to arise on remand. *Berdahl*, 2022 ND 136, ¶ 19.

[¶18] Andrews argues the district court erred in including Crichlow's medical school debt in the marital estate. He also claims the court erred in awarding Crichlow the marital home.

[¶19] The district court must consider all of the parties' assets and debts to ensure an equitable distribution of the marital property. *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. Separate property must be included in the marital estate, but the property's origin may be considered when equitably dividing the estate. *Feist v. Feist*, 2015 ND 98, ¶ 6, 862 N.W.2d 817. After all of the parties' assets and debts are included in the marital estate, the court may consider which party has incurred particular debts, and the purposes for which those debts were incurred, in determining an equitable allocation of the responsibility for repayment. *Neidviecky*, at ¶ 11.

5

[¶20] Although Crichlow incurred the medical school debt before the marriage, the district court properly included the debt in the marital estate. The court held Crichlow responsible for the debt. The court did not clearly err by including Crichlow's medical school debt in the marital estate.

[¶21] As to the marital home, the district court found Crichlow continued to live in the home after the separation and "[Andrews] has made no request for the home." The court awarded Crichlow the home and the associated mortgage. The record supports the court's findings, and we are not left with a definite and firm conviction a mistake was made. However, because we are reversing the distribution of marital property, on remand the court may reconsider its earlier distribution of marital assets.

III

[¶22] We have considered Andrews's remaining arguments and conclude they are either without merit or not necessary to our opinion. The judgment is affirmed in part, reversed in part, and remanded for further proceedings.

[¶23] Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr