# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 169

Mary Wollan, on behalf of the heirs at law
of Michael Wollan, deceased,                          Plaintiff and Appellee

v.

Innovis Health, LLC
d/b/a Essentia Health West,                           Defendant and Appellant

### No. 20240094

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Constance L. Cleveland, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Matthew L. Woods (argued), Casey L. Matthiesen (appeared), and Mark A. Hallberg (on brief), Minneapolis, MN, for plaintiff and appellee.

Angela E. Lord (argued), Fargo, ND, and Briana L. Rummel (appeared), Bismarck, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Innovis Health, LLC d/b/a Essentia Health West ("Essentia") appeals from a judgment, including an award of costs and disbursements, after a jury verdict in favor of Mary Wollan, on behalf of the heirs at law of Michael Wollan, deceased (collectively, "Wollan"), and from an order denying its motion for new trial. We hold the verdict is inconsistent, irreconcilable, and without sufficient evidence in the record to support the award. We therefore conclude the district court abused its discretion in denying Essentia's motion for new trial. We reverse the judgment and remand for further proceedings.

I

[¶2]   This is a medical malpractice action arising out of the care and treatment of Michael Wollan in September 2017. Michael Wollan was admitted to Essentia on September 21 and died on September 23, 2017. Wollan commenced this action against Essentia alleging claims of medical negligence and wrongful death. Wollan requested economic and noneconomic damages caused by Michael Wollan's death.

[¶3]   The district court held a jury trial in late February 2023 through early March 2023. The court submitted the case to the jury with a special verdict form. The first two questions on the special verdict form asked the jury to determine if Essentia was at fault in the care and treatment of Michael Wollan and, if it was, if Essentia's fault was a proximate cause of his death. The jury answered "Yes" to both questions. The jury also answered "Yes" to the third and fourth questions, which were whether a person not a party to the action was at fault and whether that fault was a proximate cause of Wollan's damages. The fifth question on the special verdict form asked the jury to allocate the fault between Essentia and any other person not a party to the action. The jury allocated 25 percent fault to Essentia and 75 percent fault to "Other."

[¶4]   Question 6 on the special verdict asked the jury to determine "the damages caused as a direct result of the fault of" Essentia. Damages were divided into

1

"Past economic damages," "Future economic damages," "Past non-economic damages," and "Future non-economic damages." The jury awarded $500,657 of total damages.

[¶5]   The district court awarded Wollan $83,530.25 in costs and disbursements. The court entered a total judgment of $639,292.06 against Essentia. Essentia moved for a new trial, which Wollan opposed. The court denied the motion.

## II

[¶6]   Essentia argues the district court erred in denying its new trial motion. Essentia moved for a new trial under N.D.R.Civ.P. 59(b)(1), (5), (6), and (7). This Court reviews a district court's decision on a motion for new trial under the abuse of discretion standard. *Zander v. Morsette*, 2024 ND 80, ¶ 7, 6 N.W.3d 623. A court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.*

## III

[¶7]   Essentia argues the jury's damage award of $500,657 against Essentia is inconsistent and irreconcilable with the jury's finding Essentia is 25 percent at fault for Wollan's damages. It further argues the finding Essentia caused Wollan $500,657 in damages is not supported by the evidence in the record.

[¶8]   "The presumption on appeal is that jurors do not intend to return conflicting answers." *Carpenter v. Rohrer*, 2006 ND 111, ¶ 8, 714 N.W.2d 804. "When a party challenges an award of damages, we generally defer to a jury verdict because damages are in the province of the jury and the matter rests largely in the jury's sound discretion." *Id.* We will reverse a jury's special verdict "only if it is perverse and clearly contrary to the evidence." *Cont'l Res., Inc. v. P&P Indus., LLC I*, 2018 ND 11, ¶ 12, 906 N.W.2d 105.

[¶9]   This Court adopted the following test to reconcile apparent conflicts in a jury's verdict:

> [W]hether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted. If after a review of the district court's judgment no reconciliation is possible and the inconsistency is such that the special verdict will not support the judgment entered below or any other judgment, then the judgment must be reversed and the case remanded for a new trial.

*Moszer v. Witt*, 2001 ND 30, ¶ 11, 622 N.W.2d 223 (quoting *Barta v. Hinds*, 1998 ND 104, ¶ 6, 578 N.W.2d 553). "Reconciliation of a verdict, therefore, includes an examination of both the law of the case and the evidence in order to determine 'whether the verdict is logical and probable and thus consistent, or whether it is perverse and clearly contrary to the evidence.'" *Barta*, at ¶ 6 (quoting *Grenz v. Kelsch*, 436 N.W.2d 552, 554-55 (N.D. 1989)).

[¶10] In question 6 of the special verdict form, for past economic damages, the jury awarded Wollan $116,657. That is the exact amount of *total* past economic damages claimed and requested by Wollan. Wollan's expert economist repeatedly testified there were $115,000 in past economic damages; Wollan testified she incurred $1,657 in funeral expenses. Based on those numbers, in closing argument Wollan requested the jury award $116,657 in past economic damages. If the jury awarded Wollan the requested past economic damages, based on its 25 percent fault allocation, the amount awarded against Essentia should have been $29,164.25. For the jury to award $116,657 of past economic damages against Essentia, the jury would have had to find Wollan suffered $466,628 of total past economic damages.

[¶11] Wollan argues the expert economist's calculation of past economic damages was conservative and the request that the jury award $116,657 for past economic damages was a floor. However, Wollan has not directed our attention to evidence in the record supporting a total of $466,628 of past economic damages. Unlike noneconomic damages, which can be "highly subjective" and are not "susceptible of arithmetical calculation," *Zander*, 2024 ND 80, ¶¶ 23, 26, past economic damages "are easily verifiable, quantifiable, and measurable," *Price v. High Pointe Oil Co.*, 828 N.W.2d 660, 673 (Mich. 2013); *see also Health Cost Controls, Inc. v. Gifford*, 239 S.W.3d 728, 733 (Tenn. 2007) (stating economic damages "have a monetary value that is readily ascertainable. It is therefore

3

reasonable to require that plaintiffs prove the monetary value of such damages with relative precision."); *Fear v. GEICO Cas. Co.*, 532 P.3d 382, 386 (Colo. App. 2023) (explaining, "in contrast to economic damages, which can be calculated with precision, noneconomic damages are inherently subjective and thus 'can be difficult to quantify and determine'"). Thus, there should be some specific evidence in the record to support an award of past economic damages of $466,628. Wollan's failure to direct our attention to evidence in the record supporting a total of $466,628 of past economic damages is "a concession no evidence exists." *Davis v. Mercy Med. Ctr.*, 2023 ND 153, ¶ 27, 994 N.W.2d 380; *see also Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 25, 559 N.W.2d 204 (deeming party's "failure to direct our attention to any record evidence to support the jury's award of $25,000 in past economic damages a concession that no such evidence exists"). Moreover, the fact the jury awarded past economic damages against Essentia in the exact total amount requested is difficult to accept as simply an "interesting coincidence." *Barta*, 1998 ND 104, ¶ 16 (VandeWalle, C.J., concurring).

[¶12] We conclude, as a matter of law, that the jury's allocation of fault in the special verdict is inconsistent and irreconcilable with its award of past economic damages against Essentia. We further conclude the jury's award of past economic damages is contrary to the evidence in the record.

[¶13] In *Davis* and *Anderson*, after finding no record evidence supporting the juries' awards of past economic damages, we reduced the juries' awards of past economic damages. 2023 ND 153, ¶ 27; 1997 ND 6, ¶ 25. We decline to do so in this case because the wording of the special verdict form, in conjunction with the jury's allocation of fault and award of past economic damages, indicates the jury's award of damages in the other categories in question 6 may not have been based on Essentia's 25 percent allocation of fault. "It is impossible to determine, with any assurance, how or why the jury went wrong." *Massey-Ferguson Credit Corp. v. Orr*, 420 N.W.2d 1, 3 (N.D. 1988). Thus, reversal and remand, rather than a reduction in the award, is appropriate. *See Barta*, 1998 ND 104, ¶¶ 9-11 (reversing and remanding when the special verdict awarding pain and suffering, but no medical expenses, was inconsistent and contrary to the evidence); *Fontes v. Dixon*, 544 N.W.2d 869, 871-72 (N.D. 1996) (reversing judgment and remanding

4

when jury's verdict awarding past noneconomic damages but not economic damages could not be reconciled); *Massey-Ferguson Credit Corp.*, 420 N.W.2d at 2-3 (reversing and remanding for a new trial after concluding the jury's answers to the special verdict are inconsistent and cannot be reconciled).

[¶14] We hold the verdict is inconsistent, irreconcilable, and without sufficient evidence in the record to support the award. We therefore conclude the district court abused its discretion in denying Essentia's motion for new trial under N.D.R.Civ.P. 59(b)(6). We reverse the judgment and remand for a new trial.

IV

[¶15] Because we are reversing and remanding for a new trial, we only address Essentia's remaining issues on appeal to the extent they are likely to arise on remand. *See Crichlow v. Andrews*, 2023 ND 45, ¶ 17, 987 N.W.2d 666; *Schmitz v. N.D. State Bd. of Chiropractic Exam'rs*, 2022 ND 113, ¶ 23, 974 N.W.2d 666. *State by & through Workforce Safety & Ins. v. Felan*, 2021 ND 97, ¶ 15, 960 N.W.2d 805; *City of Bismarck v. Mariner Const., Inc.*, 2006 ND 108, ¶ 20, 714 N.W.2d 484.

A

[¶16] Essentia argues the district court erred by using a special verdict form that is contrary to North Dakota law. The court may use a different special verdict form on remand. We therefore do not address this issue.

B

[¶17] Essentia argues the district court's *Allen* charge was coercive. This issue is specific to the jury deliberations for the trial that occurred before this appeal and is not likely to arise on remand. We therefore do not address this issue.

C

[¶18] Essentia argues the district court erred in precluding cross-examination of Wollan's witnesses at trial regarding the pretrial settlement between Wollan and a non-party physician, Dr. Kawther Soliman, who was not employed by Essentia.

[¶19] The admissibility of the settlement was the subject of pretrial motions and argument raised during the proceedings. The district court addressed Wollan's previously filed motion in limine on the first day of trial. The court ruled, "I will permit the fact that a settlement was reached for the purpose of establishing bias should Dr. Soliman testify as a witness." The court rejected the admissibility of the settlement to establish the bias of other witnesses, prohibiting Essentia from asking the Wollan family or Wollan's experts about the existence or the amount of the settlement. The court persisted in its ruling evidence of the settlement was not admissible through Wollan's family or experts. Thus, this issue is likely to arise on remand.

[¶20] The district court's ruling on Essentia's motion in limine "[did] not end the evidentiary question presented." *E.E.O.C. v. Fargo Assembly Co.*, 142 F. Supp. 2d 1160, 1161 (D.N.D. 2000). "The pre-trial exclusion of evidence by a motion in limine . . . is a preliminary order regarding the admissibility of evidence and does not dispense with the need for the proponent of evidence to make an offer of proof at trial so the district court can consider the proffered evidence in the context of other evidence presented during trial." *State v. Powley*, 2019 ND 51, ¶ 9, 923 N.W.2d 123 (quoting *Est. of Gassmann*, 2015 ND 188, ¶ 13, 867 N.W.2d 325). A "court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998). Thus, Essentia was "free to raise the issue again . . . in the context of the trial, not in the abstract." *E.E.O.C.*, 142 F. Supp. 2d at 1161; *cf.* N.D.R.Ev. 103(b) and Explanatory Note ("Once the court rules definitively on the record at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

[¶21] Essentia made one offer of proof during trial. Essentia made the following offer of proof during the testimony of Matthew Wollan, Michael Wollan's son:

> I would like to apply the rationale from this morning's conference to this witness and request that not only the settlement, but also the amount of this settlement be allowed. The Plaintiffs are making claims for economic damages in this case, which the jury will hear about through the economist this afternoon. And we know through Mr. Wollan's testimony in this case, that the settlement

6

proceeds were used for many different things, besides the economic damages that are being claimed in this case.

And for those reasons for bias, credibility, and also to illustrate the damages are not appropriate in light of the resources in what's being sought in this case, we'd request that I be allowed to go into these inquiries with Mr. Wollan.

The district court asked Essentia if it could distinguish *Thomas v. Stickland*, 500 N.W.2d 598 (N.D. 1993). Essentia argued, *Stickland* "did not say that bias was not a recognized exception under Rule 408." It then argued,

In addition, in this case, as opposed to *Strickland* [sic], we have a claim for actual economic damages and loss and we have actual knowledge that there were amounts being paid that did not go toward the loss being asserted. The economic damages being asserted.

With Mr. Wollan, for example, I think he said it went to a personal debt and a personal loan. They are making claims for maintenance and that type of thing.

Mrs. Wollan was not the sole beneficiary of the distribution apparently. I don't know what the distribution was, but Mrs. Wollan—Mr. Wollan, Matt Wollan, and also Mr.—the daughter, all received proceeds, most of which did not go to any of the economic damages being claimed in this case.

And so that is a distinguishing factor from *Strickland* [sic] as well, and *Strickland* [sic] did not exclude the recognized exception under Rule 408 to bias.

Wollan responded, stating *Stickland* is on point and that under N.D.R.Ev. 403 the court needs to balance the probative value of the evidence against its prejudice. After hearing the arguments, the court stated, "My ruling stands."

[¶22] "A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused." *Spottie, Inc. v. Baiul-Farina, Ltd.*, 2024 ND 88, ¶ 11, 6 N.W.3d 582 (quoting *State v. Salou*, 2024 ND 6, ¶ 7, 1 N.W.3d 602). "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law." *Id.* (quoting *Salou*, at ¶ 7).

7

[¶23] Rule 408, N.D.R.Ev., provides:

> (a) *Prohibited Uses.* Evidence of the following is not admissible, on behalf of any party, either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>> (1) furnishing, promising, offering, accepting, promising to accept, or offering to accept a valuable consideration in compromising or attempting to compromise the claim; and
>> (2) conduct or a statement made during compromise negotiations.
>
> (b) *Exceptions.* The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. The court need not exclude evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

[¶24] "Under N.D.R.Ev. 408, evidence of compromise or offers to compromise a disputed claim is not admissible to prove liability for, invalidity of, or the amount of a claim." *Schlossman & Gunkelman, Inc. v. Tallman*, 1999 ND 89, ¶ 16, 593 N.W.2d 374; *see also* N.D.R.Ev. 408, Explanatory Note (noting subdivision (a) was amended in 2014 "to delete the reference to 'liability' because 'liability' is covered by the broader term 'validity.' No change in current practice or in the coverage of the rule is intended."). Rule 408, N.D.R.Ev., encourages candor during settlement discussions by expanding the common-law rule and rendering inadmissible "[e]vidence of . . . conduct or a statement made during compromise negotiations." N.D.R.Ev. 408(a)(2) and Explanatory Note; *see also Tallman*, at ¶ 16. Under N.D.R.Ev. 408, when settlement evidence is offered to establish liability for, invalidity of, or the amount of a disputed claim, exclusion of the evidence is the norm. *See Tallman*, at ¶ 16; *see also Stickland*, 500 N.W.2d at 600 ("Exclusion of settlement evidence is the norm, while admission of such evidence is the exception."). The exclusion of settlement evidence is not required, however, if the evidence is offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." N.D.R.Ev. 408(b); *see also Tallman*, at ¶ 16.

[¶25] "Settlement evidence is not automatically admissible when offered for another purpose." *Schwab v. Zajac*, 2012 ND 239, ¶ 13, 823 N.W.2d 737 (quoting *City of Bismarck v. Mariner Const., Inc.*, 2006 ND 108, ¶ 22, 714 N.W.2d 484). "In deciding whether to admit settlement evidence, a district court must carefully exercise its discretion and balance the probative value of the evidence for a permissible purpose against the prejudicial effect and risk the evidence will be used for an improper purpose." *Id.* (quoting *City of Bismarck*, at ¶ 22). If the court admits settlement evidence into evidence, "the court must instruct the jury regarding its limited admissibility." *Id.* (quoting *City of Bismarck*, at ¶ 22).

[¶26] Essentia's offer of proof and argument focused on the fact Wollan was making claims for economic damages. Essentia cites no cases suggesting the general rule to exclude settlement evidence does not apply when there is a claim for economic damages. Essentia does not articulate why N.D.R.Ev. 408 should be applied differently depending on the type of damages sought. Essentia's offer of proof did not identify unique facts making the settlement evidence relevant regarding bias.

[¶27] Essentia asserts plaintiffs have a financial incentive to shift the focus away from Dr. Soliman's care. That is true in almost all cases when there is a non-party tortfeasor. Rule 408, N.D.R.Ev., "excludes evidence of settlements between litigants and third parties, including plaintiffs and third parties." *Zimprich v. N.D. Harvestore Sys., Inc.*, 461 N.W.2d 425, 431 (N.D. 1990). As explained in *Zimprich*, "If the policies underlying Rule 408 mandate that settlements may not be admitted against a defendant who has recognized and settled a third party's claim against him, it is axiomatic that those policies likewise prohibit the admission of settlement evidence against a plaintiff who has accepted payment from a third party against whom he has a claim." *Id.* (quoting *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985)). "In addition, the relevance of the settlement to the validity of the claim cannot logically be considered stronger in the former instance than in the latter." *Id.* (quoting *McInnis*, at 247).

[¶28] Essentia further asserts the district court's evidentiary ruling permitted Wollan "to place blame on and increase the allocation of fault to Essentia." However, Essentia's ability to present evidence regarding Dr. Soliman's quality

9

of care and alleged culpability was not impacted by whether settlement evidence was admitted at trial. Under N.D.R.Ev. 408, settlement evidence "is not admissible, on behalf of any party," "to prove liability for, invalidity of, or the amount of a claim." *Tallman*, 1999 ND 89, ¶ 16. Although Essentia could present evidence regarding Dr. Soliman's care and alleged medical malpractice, it could not use the settlement evidence, including the amount of the settlement, as evidence of Dr. Soliman's liability or percentage of liability, Essentia's lack of liability or percentage of liability, or the amount of Wollan's damages.

[¶29] Essentia argues the settlement evidence is relevant to the relationship between Essentia and Dr. Soliman. However, Essentia acknowledges it is undisputed Dr. Soliman was not an employee or agent of Essentia. Moreover, Essentia's ability to present evidence regarding Dr. Soliman's relationship with Essentia was not impacted by whether settlement evidence was admitted at trial. Furthermore, if needed, the parties could stipulate, or the district court could provide an instruction, regarding Dr. Soliman's relationship with Essentia.

[¶30] Based on the offer of proof, and the arguments presented on appeal, we conclude the district court's exclusion of the settlement evidence was not arbitrary, unreasonable, or unconscionable and was not a misapplication of N.D.R.Ev. 408. We conclude the court did not abuse its discretion in excluding the settlement evidence. However, this does "not end the evidentiary question presented." *E.E.O.C.*, 142 F. Supp. 2d at 1161. If a new trial is held on remand, the court will have to determine the admissibility of any proffered settlement evidence "in the context of other evidence presented during trial." *Powley*, 2019 ND 51, ¶ 9.

D

[¶31] Essentia argues the district court erred in awarding Wollan costs and disbursements of $83,530.25 and failing to apply the jury's apportionment of fault to the costs and disbursements award. Our reversal of the judgment and remand for a new trial necessarily includes reversal of the court's award of costs and disbursements. To the extent this issue may arise on remand, our recent

10

decision in *Harris v. Oasis Petroleum, Inc.*, 2024 ND 85, ¶ 19, 6 N.W.3d 611, is dispositive of the issue. We therefore do not address it further.

V

[¶32] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶33] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr